UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MOMENTUM FLEET MANAGEMENT GROUP, INC., | ) ) | CASE NO. 1:24-cv-01891 |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIDSOUTH CNGV, INC., *et al.,* | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |

Defendant Barry Rowton's ("Rowton") moves to dismiss the complaint, or in the alternative, for change of venue to the Western District of Tennessee.  (Doc. 4.)  Plaintiff Momentum Fleet Management Group, Inc. ("Plaintiff" or "Momentum Fleet") opposed the motion (Doc. 7), and Rowton replied (Doc. 9.)  For the reasons stated herein, the Motion to Dismiss is DENIED, and the Motion for Change of Venue is GRANTED.  This case is TRANSFERRED to the United States District Court for the Western District of Tennessee.

I.      **BACKGROUND**

        A.      **Factual Allegations**

Momentum Fleet is an Ohio corporation.  (Doc. 1-2 at ¶ 1.)  Defendant Midsouth CNGV, Inc. ("Midsouth") is a business located in Tennessee that manufactures and sells equipment for electric-powered vehicles.  (*Id.* at ¶ 2.)  Midsouth used the name "EV Power Pods" as a trade name.  (*Id.* at ¶ 3.)  Defendant EV Power Pods, LLC ("EVPP, LLC") is a separate business located in Tennessee that also sells equipment for electric-powered vehicles.  (*Id.* at ¶ 4.)  Defendants Dwain Beydler ("Beydler") and Rowton are owners and principals of both Midsouth and EVPP, LLC.  (*Id.* at ¶¶ 5, 6.)  Rowton lives in Fort Smith, Arkansas.  (Doc. 1 at ¶ 13.)  Beydler lives in Eads, Tennessee.  (*Id.* at ¶ 14.)

In December 2020, Beydler and Rowton represented to Momentum Fleet that Midsouth, doing business under the trade name EV Power Pods, produced equipment for alternate energy vehicles. (Doc. 1-2 at ¶ 7.) Momentum Fleet alleges Defendants intended to induce Momentum Fleet to enter into a distribution agreement with Midsouth. (*Id.*) In January 2021, Momentum Fleet and Midsouth entered into a "Reseller Agreement" to manufacture alternate energy equipment and make Momentum Fleet an Ohio distributor of Defendants' equipment.[1] (*Id.* at ¶ 8; *see also id.* at 19.)[2] Rowton signed the agreement on behalf of Midsouth. (*Id.* at 27.) Momentum Fleet alleges its customers are located both within and outside of Ohio. (*Id.*)

Momentum Fleet alleges that, on November 2, 2022, Beydler and Rowton "cancelled the trade name EV Power Pods with the Tennessee Secretary of State." (*Id.* at ¶ 9.) But, the next day Beydler and Rowton created EVPP, LLC. (*Id.* at ¶ 10.)

Momentum Fleet wired Defendants over $1,000,000 in deposits for the equipment. (*Id.* at ¶ 11.) Beydler and Rowton told Momentum Fleet its payments were "being safeguarded and equipment was being manufactured." (*Id.* at ¶ 12.) To date, Momentum Fleet alleges it "does not have all of the equipment it paid for, nor has [it] been refunded the deposits paid." (*Id.*) As a result, Momentum Fleet lost money, business, reputation, and goodwill. (*Id.* at ¶ 13.)

In March 2024, Beydler, Rowton, and Momentum Fleet signed an additional contract called the "Tripartite Agreement to Effectuate Purchase and Delivery" ("Tripartite Agreement") with an Arkansas company. (*Id.* at ¶ 14.) Beydler and Rowton signed on behalf of EVPP, LLC. (*Id.*) Momentum Fleet maintains that it has no relationship with EVPP, LLC and did not pay its

---

[1] The Reseller Agreement is between Momentum Fleet and Midsouth, dba EV Power Prods. (*See* Doc. 1-2 at 19-27.)

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

deposits to EVPP, LLC.  (*Id.*)  Momentum Fleet asserts Defendants refuse to provide evidence

they are manufacturing the equipment it paid for. (*Id.* at ¶ 15.)

### B.     Procedural History

On September 24, 2024, Momentum Fleet filed this action in the Cuyahoga County Court

of Common Pleas.  (*See* Doc. 1-2.)  Momentum Fleet brought Ohio law claims for breach of

contract, unjust enrichment, civil theft, and fraud or fraudulent inducement.  (*See id.*)  On

October 29, 2024, Rowton removed the case on the basis of diversity jurisdiction.  (Doc. 1.)

On November 5, 2024, Rowton filed the instant motion, moving to dismiss for lack of

jurisdiction, or in the alternative, change venue to the Western District of Tennessee.  (Doc. 4.)

On January 6, 2025, Momentum Fleet opposed the motion.  (Doc. 7.)  On January 21, 2025,

Rowton replied.  (Doc. 9.)  While other defendants consented to removal (Doc. 1 at ¶¶ 19, 20),

no other defendant has similarly moved or objected to Rowton's alternative request to change

venue.

## II.     LAW AND ANALYSIS

### A.     Personal Jurisdiction

A defendant may challenge personal jurisdiction through a motion to dismiss.  *See* FED.

R. CIV. P. 12(b)(2).  When such a challenge is made, the "plaintiff bears the burden of

establishing that jurisdiction exists." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.

1991).  The Sixth Circuit has explained the framework for evaluating these motions:

> Motions to dismiss under Rule 12(b)(2) involve burden shifting.  The plaintiff must
> first make a prima facie case, which can be done merely through the complaint. The
> burden then shifts to the defendant, whose motion to dismiss must be properly
> supported with evidence.  Once the defendant has met the burden, it returns to the
> plaintiff, who may no longer stand on his pleadings but must, by affidavit or
> otherwise, set forth specific facts showing that the court has jurisdiction.

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (quotations and

citations omitted); *see also Theunissen*, 935 F.2d at 1458 (holding that "in the face of a properly

supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by

affidavit or otherwise, set forth specific facts showing that the court has jurisdiction"). The

Court has discretion to direct how a challenge to personal jurisdiction will be presented and

resolved. *Theunissen*, 935 F.2d at 1458-59 (citations omitted); *see also Mich. Nat'l. Bank v.

Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989*)*; *Serras v. First Tennessee Bank Nat.

Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

When a court decides the motion upon the written submissions, "the plaintiff must make

only a *prima facie* showing that personal jurisdiction exists," *Theunissen*, 935 F.2d at 1458, by

demonstrating "facts which support a finding of jurisdiction." *Welsh v. Gibbs*, 631 F.2d 436, 438

(6th Cir. 1980). This burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164,

1169 (6th Cir. 1988) (citations omitted). To determine whether a plaintiff has made *prima facie*

showing, the Court construes all facts "in a light most favorable to the plaintiff," *Theunissen*, 935

F.2d at 1459, and regards factual disputes as "irrelevant." *See Malone*, 965 F.23 at 505.

A court sitting in diversity does not have personal jurisdiction unless the defendants are

(A) "amenable to service of process under [Ohio's] long-arm statute" and (B) the "exercise of

personal jurisdiction would not deny [defendants] due process." *Bird v. Parsons*, 289 F.3d 865,

871 (6th Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954

F.2d 1174, 1176 (6th Cir. 1992)).

The Court's due process analysis focuses on whether the defendant had "certain

minimum contacts" with Ohio "such that maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316,

66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339,

85 L. Ed. 278 (1940)). "[P]ersonal jurisdiction can either be specific or general" depending on

the facts presented. *Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549-50

(6th Cir. 2007) ("*Air Prods.*").

Specific jurisdiction depends on "the relationship among the defendant, the forum, and

the litigation." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014)

(quotations and citations omitted). The Sixth Circuit applies a three-part test to determine

whether specific personal jurisdiction comports with due process. "First, the defendant must

purposefully avail himself of the privilege of acting in the forum state or causing a consequence

in the forum state." *Sullivan v. LG Chem., Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (emphasis

removed) (quoting *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)).

"Second, the claims 'must arise out of or relate to the defendant's contacts with the forum.'" *Id.*

(quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351,359, 141 S. Ct. 1017, 209

L. E. 2d 225 (2021)). And "[t]hird, 'the acts of the defendant or consequences caused by the

defendant must have a substantial enough connection with the forum state to make the exercise

of jurisdiction over the defendant reasonable'." *Id.* (quoting *AlixPartners*, 836 F.3d at 549-50);

*see also Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012).

Rowton argues the Court lacks specific personal jurisdiction over him "because he does

not have sufficient minimum contacts to sustain personal jurisdiction in the state of Ohio." (Doc.

4 at 59.) To Rowton, signing a contract in a representative capacity with an Ohio corporation

and engaging in electronic communications are not sufficiently pervasive contacts to satisfy

Ohio's long-arm statute or due process. (*Id.*) Instead, Rowton characterizes his contacts with

Ohio as "exactly the kind of 'random' and 'attenuated' contacts contemplated by the Supreme

Court." (*Id.* at 61.) Rowton further asserts that alleging he is an owner and principal of

Midsouth and EVPP, LLC "proves nothing jurisdictional." (*Id.* at 62 (citing Doc. 1-2 at ¶ 6).)

In opposition, Momentum Fleet emphasizes Rowton's contacts with Ohio. (Doc. 7 at 75-77.) Generally, these allegations—which are taken as true at this stage—underscore several facts: Midsouth contracts with customers across the country; Momentum Fleet is an Ohio distributor whose customers reside within and outside Ohio; and Momentum Fleet sent Defendants wire transfers from Ohio. (*See id.*) According to Momentum Fleet, Rowton's conduct falls under Ohio's long-arm statute because he contracted with an Ohio business; worked with an Ohio business; communicated with an Ohio business; received significant funds from an Ohio business; and breached a contract with an Ohio business. (*Id.* at 80-81 (citing Ohio Rev. Code. § 2307.382(A)).) Momentum Fleet also attacks Rowton's failure to include an affidavit supporting his motion. (*Id.* at 78.) Without any declaration, affidavits, or related documentary evidence, Momentum Fleet argues Rowton has not properly stated a jurisdictional issue. (*Id.* at 81-82.)

Rowton's motion is not supported by an affidavit. Nor does Rowton attach exhibits in support of his motion. The sole grounds for Rowton's position are attorney argument, statutory provisions, and case law. Because Rowton did not support his motion with evidence, it follows that this is not a "properly supported motion" within the meaning of *Malone* and *Theunissen.* Accordingly, Rowton's motion does not deprive Momentum Fleet of the option to stand on its pleading in opposition. Likewise, the burden does not shift back to Momentum Fleet to "by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Malone*, 965 F.3d at 504 (quoting *Theunissen*, 935 F.2d at 1458).

### 1.    Purposeful Availment

A defendant purposefully avails itself of a forum when it "act[s] or cause[s] a consequence" in the forum such that it "invoke[s] the benefits and protections" of that forum's

law.  *MAG IAS Holdings*, *Inc. v. Schmückle*, 854 F.3d 894, 900 (6th Cir. 2017) (citations

omitted).  The requirement of purposeful availment is "more aspirational than self-defining," but

years of judicial experience have uncovered four principles that now guide the Court.  *Power

Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917-18 (6th Cir. 2019) (quoting *Dudnikov v. Chalk &

Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)).

         First, the defendants' forum contacts must be intentional.  Purposeful availment requires

the defendant to have "deliberately reached out beyond its home" into the forum.  *Ford*, 592 U.S.

at 359 (quotations and citations omitted).  Contacts that are no more than "random, fortuitous, or

attenuated" are not enough.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct.

2174, 85 L.Ed.2d 528 (1985) (quotations and citations omitted).

         Second, the defendant's forum contacts must be of sufficient significance.  The defendant

must have "created a 'substantial connection' with the forum state by engaging in 'significant

activities within [the] State,' or by creating 'continuing obligations' to residents in that state."

*MAG IAS Holdings, Inc.*, 854 F.3d at 900 (quoting *Burger King Corp.*, 471 U.S. at 475-76).

Substantiality does not require any specific type of contact.  For example, forum contacts can be

substantial even when the defendant is not physically present in the forum, though physical

presence is relevant to the analysis.  *Id.* (citing *Burger King Corp.*, 471 U.S. at 476, and *Walden*,

571 U.S. at 285).  Instead, whether forum contacts are sufficiently substantial depends on the

"quality of the contacts, and not their number or status."  *CompuServe, Inc. v. Patterson*, 89 F.3d

1257, 1265 (6th Cir. 1996) (quotations and citations omitted).  That said, "[a] single deal with an

in-forum resident [ ] does not by itself suffice."  *Power Invs. LLC*, 927 F.3d at 918 (citing *Burger

King Corp.*, 471 U.S. at 478*); see also Neogen Corp. v. New Gen Screeining, Inc.*, 282 F.3d 883,

891 (6th Cir. 2002) (explaining that a "one-time, unlikely-to-be-repeated" deal did not create

personal jurisdiction).

Third, purposeful availment depends on the "contacts that the 'defendant [it]self' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp.*, 471 U.S. at 475). Because personal jurisdiction focuses on the defendant, contacts between a plaintiff or third party and the forum state cannot establish minimum contacts. *Id.*

Fourth, and relatedly, purposeful availment "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. While the "defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," the Supreme Court has explained that the "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286.

Applying these four guiding principles, the Court finds Momentum Fleet has not pleaded facts to support purposeful availment. The Sixth Circuit's decision in *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997), is helpful on this issue. There, a Michigan company approached an Oklahoma company, offering to sell steel coils. *Id.* at 148. The Oklahoma company agreed and took possession of the coils in Illinois but refused to pay the Michigan Company. *Id.* The Michigan company argued a district court in Michigan could exercise personal jurisdiction over the Oklahoma company. *See id.*

The Sixth Circuit held that merely contracting with a corporation from one state does not show purposeful availment of the benefits and protection of that state's laws. *Id.* at 151. Put differently, "'contract[ing] with an out-of-state party alone' cannot 'automatically establish minimum contacts.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 478). Placing telephone calls and sending faxes to the Michigan company was "precisely the sort of 'random,' 'fortuitous' and

'attenuated' contacts that the *Burger King* Court rejected as a basis for haling on-resident

defendants into foreign jurisdictions." *Id.* (citing *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d

1293, 1301 (6th Cir. 1989)). "[M]aking of payment in the forum state, and the provision for

delivery in the forum state are secondary or ancillary factors and cannot alone provide the

'minimum contacts' required by due process." *Id.* (citing *Sculling Steel Co. v. Nat'l Ry.

Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982)). The Sixth Circuit also noted the purchase

agreement between the two companies "represents nothing more than an isolated transaction"

and the record did not show the Oklahoma company "intended to create an ongoing relationship

in Michigan." *Id.*

Momentum Fleet has not alleged which individual defendant or corporate defendant

made the initial approach to contract. (*See* Doc. 1-2.) In fact, the complaint provides no details

on Rowton's specific involvement in negotiating either contract. Instead, the complaint simply

alleges that as the owner and principal of MidSouth and EVPP, LLC, Rowton communicated

with Momentum Fleet, an Ohio company. (Doc. 1-2 at ¶¶ 6-8, 14.) Under *Kerry Steel, Inc.*,

these communications are not enough to establish Rowton purposely availed himself of the

benefits and protections of Ohio's laws. 106 F.3d at 151. Any jurisdiction the Court might have

over MidSouth and EVPP, LLC does not automatically confer personal jurisdiction over

MidSouth and EVPP, LLC's owners and principals, including Rowton. *See Balance Dynamics

Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (holding jurisdiction over a

corporation is insufficient to create jurisdiction over the individual officers of a corporation).

Next, the Court addresses the allegation that Momentum Fleet serves customers both

within and outside Ohio. Taking this allegation as true, there is no evidence on the record

establishing what portion of Momentum Fleet's customers are in Ohio or what portion of

MidSouth and EVPP, LLC's business occurs in Ohio through Momentum Fleet or any other

distributor.  Accordingly, this allegation does demonstrate Rowton has sufficient contact with

this district to establish personal jurisdiction.  *See In re Impact Absorbent Techs., Inc.*, 106 F.3d

400 (Table), 1996 WL 765327, at *3, 1996 U.S. App. LEXIS 41671 (6th Cir. 1996) ("[T]he

actions of a distributor do not create the minimum contacts necessary to extend personal

jurisdiction to the manufacturer of a product."); *see also IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d

760, 773-74 (N.D. Ohio 2019) ("[T]he use of independent contractors alone does not confer

specific jurisdiction when the defendant has little control over the actions of its independent

contractors.").

Unlike in *Kerry Steel, Inc.*, the parties entered into both the Reseller Agreement and the

Tripartite Agreement.  (Doc. 1-2 at ¶ 14.)  Though Momentum Fleet states the purpose of the

Reseller Agreement was for Momentum Fleet to become a "distributor" of Defendants'

equipment, Momentum Fleet has not argued the parties intended to create an ongoing

relationship between Rowton and Ohio.  *See Kerry Steel, Inc.*, 106 F.3d at 151; *see also Ahkeo

Labs LLC v. Plurimi Inv. Managers., LLP*, 293 F. Supp. 3d 741, 755-56 (N.D. Ohio 2018)

(discussing and rejecting argument that a continuing relationship rather than an isolated

transaction justifies personal jurisdiction over a corporation).  The existence of a legal agreement

between Momentum Fleet and Rowton is not enough.  *See Calphalon Corp. v. Rowlette*, 228

F.3d 718, 722 (6th Cir. 2000).

Rowton did not purposely avail himself of the privileges of acting in Ohio or causing a

consequence in Ohio.  *See Sullivan*, 79 F.4th at 670.

### 2.    Arise Out Of or Relate To

Due process also requires that a plaintiff's claims "arise out of or relate to the defendant's

contacts with the forum."  *Ford*, 592 U.S. at 359 (quotations and citations omitted).  This

standard does not necessarily require a causal connection between the defendant's contacts and

plaintiff's claims.  While "[t]he first half of that standard asks about causation[,] the back half,

after the 'or,' contemplates that some relationships will support jurisdiction without a causal

showing."  *Id.* at 362.

Of course, the "relate to" inquiry "does not mean anything goes."  *Id.*  There are "real

limits" that "protect defendants foreign to a forum."  *Id.*  In practice, "relate to" means that the

defendant's forum contacts are of the same type that gave rise to the plaintiff's claims, even if

the actions that created those claims occurred outside the forum.

Again, the complaint allegations give little detail as to Rowton's specific involvement in

negotiating the transaction with Momentum Fleet.  Without more, it is not at all clear that the

alleged breach or injury arose from "the very soil from which the action for breach grew . . . ."

*Calphalon*, 228 F.3d at 724 (quotations and citations omitted).  And the limited factual

allegations do not provide sufficient information from which the Court could conclude the

consequences of the breach or injury substantially effected Ohio.

### 3.    Reasonableness

The last step in the due process inquiry is to determine whether exercising personal

jurisdiction would be reasonable.  In assessing reasonableness, courts consider multiple factors,

including: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's

interest in obtaining relief; and (4) other states' interest in securing the most efficient

resolution . . . ."  *Air Prods.*, 503 F.3d at 554-55 (citation omitted).

Rowton is a citizen of Arkansas.  He is an owner and principal of Tennessee companies.

Litigating in Ohio would place a substantial burden on Rowton.  *Intera Corp. v. Henderson*, 428

F.3d 605, 618 (6th Cir. 2005).  Ohio has some interest in this dispute because Momentum Fleet

has its principal place of business in Ohio, but that interest is mitigated because the pleading

allegations do not establish that Rowton's allegedly unlawful or injurious activity occurred in

Ohio. *Id.*

The fourth factor, Tenessee's interest in efficient resolution, is apparent given

Momentum Fleet's allegation that defendants allegedly engaged in fraudulent conduct in

Tennessee and the funds at issue are in Tennessee. Only the third factor arguably weighs in

Momentum Fleet's favor because Momentum Fleet has a substantial interest in obtaining relief.

*Id.* at 619. On balance, it would not be reasonable for the Court to exercise personal jurisdiction

### B.    Improper Venue

"[A] Rule 12(b)(3) motion to dismiss for improper venue is simply the procedural vehicle

by which to challenge improper venue; the Rules of Civil Procedure do not contain any venue

provisions or requirements. The requirements for venue are set by statute, as are the remedies

available for improper and inconvenient venue." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d

531, 538 (6th Cir. 2002). "Whether venue is 'wrong' or 'improper' depends exclusively on

whether the court in which the case was brought satisfies the requirements of federal venue

laws[.]" *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55, 134

S. Ct. 568, 187 L. Ed. 2d 487 (2013). "This question—whether venue is 'wrong' or

'improper'—is generally governed by 28 U.S.C. § 1391." *Id.*

Section 1406(a) "allows a district court to grant a change of venue when venue is

improper in the original forum." *O'Brien Constr., Inc. v. Miller*, No. 1:19-cv-1451, 2020 WL

1187259, at *4 n.3, 2020 U.S. Dist. LEXIS 43033 (N.D. Ohio Mar. 12, 2020) (citing *Pittock v.

Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993)). A "district is 'wrong' within the meaning of

§ 1406 when there is 'either improper venue or lack of personal jurisdiction.'" *Jones v. Grants

Auto.*, No. 5:21-cv-2366, 2022 WL 874284, at *1, 2022 U.S. Dist. LEXIS 53591 (N.D. Ohio

Mar. 24, 2022) (citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980)). As a result, this

section does not require a court to have personal jurisdiction to enact the transfer. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not.").

Having concluded that it lacks personal jurisdiction, this Court may either "dismiss[ ] the action without prejudice, or, in the interest of justice, transfer[ ] it to a court that has personal jurisdiction over [the defendant] pursuant to 28 U.S.C. §§ 1406(a) or 1631." *Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 F. App'x 468, 472 (6th Cir. 2012) (first citing *Intera Corp. v. Henderson*, 428 F.3d at 620, and then citing *Roman v. Ashcroft*, 340 F.3d 314, 328-29 & n.11 (6th Cir. 2003)). The choice between dismissal and transfer falls within the sound discretion of the district court. *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998). "Doubts about whether to transfer or dismiss are usually resolved in favor of transfer because the interest of justice generally is better served by transfer." *Delta Media Grp., Inc. v. Kee Grp., Inc.*, No. 5:07CV01597, 2007 WL 3232432, at *6, 2007 U.S. Dist. LEXIS 80878 (N.D. Ohio. Oct. 31, 2007) (citation omitted).

Rowton concedes venue "is proper in the Western District of Tennessee." (Doc. 4 at 64.) But he contends dismissal rather than transfer is appropriate under § 1406(a). (*Id.*) Given that Plaintiff is an Ohio corporation, some defendants are citizens of Tennessee, and Rowton is a citizen of Arkansas, the Court is not persuaded Momentum Fleet filed this matter in an attempt to forum shop. (*See id.*; *see also* Doc. 7 at 83-84.)

The Court finds the interests of justice support transferring this case to the Western District of Tennessee. Rowton is a principal and owner of Tennessee companies, the other defendants are citizens of Tennessee, the Reseller Agreement has a Tennessee forum selection

clause, and the alleged fraudulent conduct occurred in Tennessee.  Rowton also acknowledges

the action could have been brought in Tennessee.  Further, dismissing Rowton from this action

will not dispose of this matter and could lead to duplicative litigation.  "Under the circumstances,

the sensible result is not to dismiss one party defendant without prejudice for lack of jurisdiction,

but instead to transfer the entire action to a district where all parties can proceed in the most

efficient manner available."  *Delta Media Grp., Inc.*, 2007 WL 3232432, at *6 (citations

omitted); *see also Neely v. MRI Software, LLC*, No. 1:23 CV 00311, 2023 WL 4826547, at *6,

2023 U.S. Dist. LEXIS 130043 (N.D. Ohio July 27, 2023).  The other defendants did not oppose

Rowton's motion, and the interests of justice support transfer.

        **C.**       **Forum Selection**

Both parties discuss transfer under § 1404(a) pursuant to forum selection clauses found in

the Reseller Agreement and Tripartite Agreement.  (Doc. 4 at 65-68; Doc. 7 at 84-88.)  Rowton

highlights the Reseller Agreement's forum selection clause, which specifies that this the

agreement "shall be governed by and construed in accordance with the internal laws of the State

of Tennessee" and states "[t]he parties hereby consent irrevocably to the personal jurisdiction of

any court sitting in Shelby County, Tennessee as the exclusive forum to resolve any dispute

relating to this Agreement and/or the relationship between the parties.  (Doc. 4 at 66.)  The

Tripartite Agreement also contains a forum selection clause that states it is governed by Arkansas

law, and "the state and federal courts located in Washington County, AR shall have exclusive

jurisdiction."  (*Id.* at 67.)  Rowton acknowledges that "[t]hese provisions conflict on their face,"

but asks the Court to enforce the Reseller Agreement's forum selection clause because the

dispute centers on a contract, and "[t]he 'contract' discussed could only be the January 2021

Reseller Agreement."  (*Id.*)

Momentum Fleet argues the forum selection clause in the Reseller Agreement is vague and unenforceable because it "does not actually specify a venue at all." (Doc. 7 at 85.)  In support, Momentum Fleet highlights that Shelby County, Tennessee has "no less than nine different courts." (*Id.* at 86.)  Next, Momentum Fleet argues the forum selection clause was obtained by fraud, duress because the Reseller Agreement was not negotiated in good faith. (*Id.*)  Last, Momentum Fleet argues the forum selection clause is permissive rather than mandatory and therefore allows for litigation in this Court. (*Id. at 87.)*

Courts in this district have held that § 1404(a) allows for transfer "only if the transferor court is a proper venue." *Rugged Cross Hunting Blinds, LLC v. DBR Fin., Inc.*, No. 1:23-cv-1944, 2023 WL 11780377, at *2 (N.D. Ohio Oct. 30, 2023) (citing *Martin*, 623 F.2d at 471 ("Section 1404(a) applies in general to those actions brought in a permissible but inconvenient forum.")).  Because this district is not the proper venue, § 1404(a) does not apply.

## III.    CONCLUSION

For the reasons stated herein, Defendant Barry Rowton's Motion to Dismiss is DENIED, and his Motion for Change of Venue is GRANTED. (Doc. 4.)  This matter is TRANSFERRED to the United States District Court for the Western District of Tennessee.

**IT IS SO ORDERED.**

**Date:** August 27, 2025

_____

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE